(No. 4324—⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛)

WALTER WITTE, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 8, 1952.*

ROBERT E. DOLPH, Attorney for Claimant.

IVAN A. ELLIOTT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

SCHUMAN, C. J.

On December 29, 1949, at about 3:30 P.M., claimant, then 41 years old, and an inmate of the Vandalia State Penal Farm, (where he had been committed for vagrancy on September 25, 1949) was engaged in painting one of the buildings located on the grounds of the institution, and, while so working, stepped into an incline, fell, and injured his right knee.

Immediately after the accident, claimant was placed in an automobile by Frank Hartigan, a registered male nurse, and Mr. Churchill, an inmate orderly, and was taken to the institutional hospital. He was carried by

the two men into the hospital. Claimant was then treated by Mr. Hartigan for shock. The next morning Mr. Hartigan administered a hypodermic, but nothing else that day. The following day claimant was fluoroscoped in the dispensary of the hospital. Mr. Hartigan, Mr. Churchill, and four colored boys attempted to set his right leg. Claimant was placed under anesthetics, and gained consciousness about a half hour later. There was no treatment given, except Mr. Hartigan placed an Ace bandage on the right knee. He received no medication or treatment after that. Dr. S. W. Moore, the institutional physician, saw claimant for the first time on January 8, 1950, ten days after the accident, but prescribed no medication. The Ace bandage had been removed by Mr. Churchill, and the swelling of the knee became worse. On January 9, 1950, weight traction of five pounds was instituted on Dr. S. W. Moore's orders, and under Mr. Hartigan's supervision, to correct the recurrent deformity of the right knee. On January 17, 1950, half of the weights were removed, and, on January 20, 1950, all weights were removed, an Ace bandage was reapplied, and heat treatments administered. Dr. S. W. Moore visited the claimant the second time, after he had been in the hospital for about three weeks. During claimant's stay in the hospital, he was attended by Mr. Hartigan, the male nurse, and Mr. Churchill, the inmate orderly. Dr. S. W. Moore gave claimant a fluoroscopic examination three days before he left the hospital. Claimant remained in the institutional hospital about a month, and was then transferred to Dormitory B, where he stayed two or three weeks, during which time he saw no physician or surgeon, and received no medication or treatment. He was then sent to Dormitory D. Claimant made no complaint to any

supervisor, and he did not work on the institutional grounds after he left the hospital. He was released from the institution about March 24, 1950.

During the first week in May, 1950, claimant went to the Hines Hospital, where he stayed a period of about one month. X-Rays were there taken of his right knee.

Dr. Robert B. White, medical expert, testifying for claimant, stated he made a physical examination of claimant on July 27, 1951, and found that, in comparing the right and left knees, there was an obvious deformity of the right knee, characterized by a displacement of the head of the fibula. X-Ray pictures were taken of both of claimant's knees on July 28, 1951. These X-Ray films were admitted into evidence as claimant's exhibits Nos. 1, 2, 3 and 4.

In interpreting the X-Ray films, Dr. White stated exhibit No. 1 was a film of claimant's right knee, and showed a healed fracture of the upper end of the tibia, with a marked latter displacement of the fibula, which is attached to the fragment, and a depression and irregularity of the joint surface. Exhibit No. 2 was a picture of claimant's right knee. It showed a side view of the same fracture described in exhibit No. 1, with a marked depression of the joint surface, and irregularity of the surface. Exhibit No. 3 showed the left knee, and was a normal X-Ray picture of a knee. Exhibit No. 4 was also a picture of claimant's left knee, and showed a normal X-Ray picture of a knee. Exhibits Nos. 5 and 6 were X-Ray films taken of the right knee on May 2, 1950 at Hines Hospital, and were admitted into evidence with the qualification that the respondent does not admit the truthfulness of the testimony or the genuineness of the exhibits. In his interpretation of exhibit No.

5, Dr. White stated it showed a healed fracture, and represents the joint surface of the upper end of the tibia, with a marked depression and irregularity of the joint surface. Exhibit No. 6 showed a healed fracture through the upper end of the tibia, involving the joint surface, with a marked depression and irregularity of that joint surface, and a marked displacement of the upper end of the fibula, which is attached to the fracture fragment. There was less healing shown in this particular film taken on May 2, 1950.

Dr. White stated that the age of the fracture shown in exhibit No. 5 was within a year of the fracture. His opinion was based on a comparison with claimant's exhibits Nos. 1, 2, 3 and 4 taken on July 28, 1951, and the marked degree of healing that had occurred sometime before the earlier films and the most recent films.

Dr. White also testified that a fluoroscopic examination of a fracture was not as accurate as an X-Ray picture. He further testified that the injury to claimant's knee was permanent, that he will have or has already had considerable pain in arthritic changes, which will become progressively worse in the next few years; that claimant bore weight with considerable difficulty, and that there was a deformity of the right knee.

At the time of the hearing, claimant walked with a limp of the right foot. He stated he was a pianist, and his only employment at present was playing the piano once a week.

Dr. S. W. Moore, the institutional physician, was on vacation at the time of the accident in question, and did not see claimant until January 8, 1950. Frank Hartigan, the registered male nurse, was instructed to call Dr. C. H. Moore in the absence of Dr. S. W. Moore for such cases, if in doubt as to the necessary treatment.

Dr. C. H. Moore was ill at the time of claimant's accident, and advised Mr. Hartigan to proceed with the reduction of what he felt was a dislocation of the right knee, as revealed by fluoroscopic examination.

There is no question from the testimony in this case that the State was negligent in the treatment of claimant, and in its failure to furnish competent medical services after it assumed responsibility of caring for him.

As a result of the injury and improper care, claimant has sustained a permanent injury to his right knee, and is entitled to an award.

An award in the amount of $1,500.00 in favor of claimant is allowed.